181721, Boch Imports, etc. v. NLRB Good morning, Your Honors. May it please the Court, Anthony Rizzotti and Greg Brown representing Boch Honda in this case? Your Honors, I'd suggest that the Board erred when it concluded that Boch Honda did not effectively repudiate certain policies in its 2010 handbook. Among other reasons that I cite is that, as Member Johnson in the dissent indicated, and as applicable Board precedent states, the Board must look at the fatality of the circumstances when deciding repudiation apply the standards of the Passevant Memorial Hospital case, not in a mechanical way, but in a case-by-case basis. I'd also suggest, with respect to the repudiation issue Didn't you waive this issue? Did we waive this issue? Well, by failing to object to the ALJ's decision to the NLRB? No, I don't believe that we did, Your Honor. We took exception to the fact that this issue was indeed moot. All of the issues associated with the 2010 handbook was indeed moot, and we accepted that specifically, as well as accepted to the findings associated with that. In fact, if you look at the Board's decision, the ALJ's decision on this, it starts its decision by saying that the only issue that was litigated was the issue of whether or not the dress code policy was unlawful or not. It specifically says in the judge's decision that the judge didn't deal with those other issues. It was only after the decision came out and the record was closed that the judge, in that case, then came forward and said, you know, I looked at the law, I looked at Passevant, and my initial reaction was wrong, so now I am going to go into an analysis of that, even though he said in his very decision that it wasn't litigated. Did you object at that point? I don't know, is there any way to have a reconsideration from the ALJ? I'm just not familiar with the procedure. We, trial counsel, objected at the hearing, certainly with respect to, or not objection, there was a discussion at the beginning, and it's recited in the judge's decision. But after his decision, did you do, did trial counsel do anything? Did he say, hey, wait a minute, this is not, the law of the case was this was not in the case. Yes. And so was there any, when the decision came down, was there any steps taken to say, wait a minute, we didn't put any evidence in on this because we were told that it was not part of what was going to be considered? We did, Your Honor. We took exception to that, to the region, and those issues were litigated before the full board and were before the full board, and as addressed in the full board's decision. And indeed, I think that the general counsel here, the board here, really only takes issue with the question of whether or not part of our argument is, was raised, and that was whether or not we specifically claimed at the board, took exception at the board to the notion that we were lulled into not producing this evidence. I suggest to you that our first exception covers that. That's what we, when we said that these issues were moot, they were mooted because the ALJ, as he states in his decision, did not even litigate these issues, and that's the exception we took to the full board, and that's what we appealed to. Are you saying you told the full board that if this issue were considered on the merits, you needed the opportunity to submit more evidence, and needed a remand to the ALJ, or needed the opportunity to submit that evidence to the NLRB? I don't know if we requested a remand. What we did say, Your Honor, is that under Passevant, A, the factors were applied incorrectly, and B, I do believe we raised the exception that those issues were indeed moot. So there's two pieces here, Your Honor. First is, was the, were the facts... Are you asking us to send it back so you can submit more evidence? I'm asking you in the first instance to conclude that the AL, that the board and the ALJ misapplied Passevant, that they made errors of law, that their decisions were not supported by substantial evidence, and that their decision there was arbitrary and capricious. That's assuming that the record that's there is a record you accept? Yes. Yes. Okay, so just even on this record, take the record, everything went just as it should have, you still think they got Passevant wrong, you'd like us to reverse? Absolutely. Okay, then second... ...is the one that Your Honor just mentioned. That's the primary argument. The secondary one is that this issue was never litigated in full, and so secondarily, if the court were to say, we're wrong, you know, the law is what it is, or it is what the board is, we suggest it should be remanded for that reason. But I think the core of our case is... And just so I have an understanding, what, what, how were you prejudiced by not having an opportunity to put evidence in? What's the kind of thing that you weren't able to put in? I don't quite understand. So let me give you as an example what we did put in on the dress code, right? And then I'll compare it to the other cases. In the dress code... Well, just, just do what, what would be relevant to the repudiation issue? Well, what would have been relevant to the repudiation is the context with respect to each one of the policies. Confidentiality, social media, et cetera. How those policies were applied in the workplace... So it would be relevant to whether it was needed to have a repudiation, that kind of evidence. Exactly. Because in this case, all of the policies, including the ones that we repudiated, all of the policies, the allegation is not that we intentionally committed an overt act unfair labor practice. It's not that we had policies that expressly restricted Section 7 rights. It is that we had policies that, in the board's view, were ambiguous and could reasonably be construed. You say the term could or would. And I'm going to ask the board counsel that question. Is the difference between the word could and the word would? And it seems to me could is very different than would. Anything can be construed by someone. But would is very different. Would is a much tougher standard than could. And you haven't made very much of the difference between could and would. You're not doing it here. Yeah. I agree. There is a difference between that, Your Honor. Perhaps one of the reasons that we're not making much of it in the argument or in our brief is the very fact that at the ALJ level, there was no evidence submitted about those other policies. They weren't litigated, as the judge said himself. So I do think could reasonably be construed is a tougher standard for them to meet. And when I talk about the PINs issue in a moment, I think that that becomes very, very relevant. Returning to my primary argument, Your Honor, which is they misapplied the PASAVON factors, I point the court's attention to cases like Roy Hill and River's Edge, where they talk about, the board itself talks about the fact that you have to look at the totality of the circumstances in making these decisions. The board relies on three cases to dispute that. One is the ARC case. I suggest to you that that case is distinguishable because there, in ARC, the employer continued to enforce the very policy that it supposedly repudiated. They also rely upon a case called Casino San Pablo. And again, I suggest that case is distinguishable because there, the policies at issue did expressly restrict Section 7 rights. Unlike our case, where I don't think it's undisputed by the board. Why does that matter for purposes of the reasonableness of the NLRB's judgment that repudiation is kind of the presumptive requirement? So whether or not, if you have a violative workplace rule, and you don't contest here that it did violate the law? We don't contest. Right. So you take it that you had an overbroad restriction workplace rule. For the purpose of sharing, yes. And the NLRB's default position, as I understand it, is when you have such a rule, it's not enough just to change it. You have to tell people that we understand that that rule that we had previously was violative and it's no longer in place because only then do we have confidence that the employees will understand that the employer is not going to take action against them under the new rule. That seems like, just as an abstract matter, a reasonable position to take. And so I'm not quite sure why it matters whether the workplace rule was actually restrictive or whether it was violative just because it would be understood or could be understood to be restrictive. Here's why it matters, Your Honor. If you look at the case law, there are cases before the board and perhaps even court cases where not all of the pass-avant factors were satisfied. And in fact, in the certain cases cited in our brief where the board has said you don't have to apply them in a mechanical way, you've got to look at what happened in this particular case. And if you look at the facts of this case, I'd suggest to this court that they're very compelling. We had a case where the union representing these employees filed a charge alleging that a number of provisions were overbroad. My client, over the course of months, worked with the board to go through a line-by-line revision to this handbook. There's no allegation that those handbook provisions, unlike others, expressly limited Section 7 rights. It was purely a question of whether or not they were ambiguous enough that they could be construed in that way. Am I correct that there was no evidence that any employee came forward and said, I would have done X, but I thought that these rules were such that that was something I couldn't do? Yes, Your Honor. You are correct. And in fact, the record goes further than that. In the record, there's evidence that during the time that these ambiguous rules were in effect, the employees exercised their Section 7 rights vigorously. They sought to be represented by a union. They had a union election. They picketed. They sought to decertify the union. They had a decertification. Your Honor, you seem to be suggesting a policy that the NLRB certainly could adopt, which would be that whenever the workplace rule is violative only because it could have been understood rather than because it actually had a chilling effect, there's no need for repudiation. But that's not the NLRB's position. So what I guess I'm trying to figure out is for us to reverse the NLRB, they had to have done something arbitrary, inconsistent with their precedent. The precedent actually conflicts with it. Or that the actual logic of it is arbitrary. So I don't understand what your argument is as to why we would reverse as opposed to why you might not make a good argument for the NLRB to choose on its own to adopt a different policy. Your Honor, the reason that I'm suggesting, it's not that I'm suggesting we don't have to repudiate. I'm suggesting that under PASCONT, we did repudiate. We reissued the handbook with the offending provisions changed to the complete satisfaction of the board with respect to those provisions. But that could be true in every case in which repudiation is required. I'm sorry, Your Honor, I missed that. In every case in which repudiation is actually required, right, the true statement, we also violated the law, presumably the workplace rule is also changed. But what the repudiation  is required. I disagree, Your Honor. I suggest that when you look at Boyle, you look at River's Edge, you look at the general counsel's opinion letter in Walmart, in certain kinds of cases I would suggest to you that that kind of affirmative statement is necessary. Where what we're doing here is simply making ambiguous policies unambiguous, I'd suggest to you that by reissuing those policies with no evidence that anybody but the board thought they were ambiguous was sufficient repudiation. The union initially is the one who raises the ambiguity. Now, again, has the board used a could standard in the past? I think they've used a would standard and they have rejected a could standard. I believe you're correct, Your Honor. And yes, the union did file the charge here, but there was no evidence from a union official who testified or an employee that testified that there was any perceived ambiguity on the part of any employee. So our issue is we repudiated, Your Honor. The question is, what do you have to do under the law to repudiate? And we'd suggest that under the existing law, we did enough to repudiate those offending policies. How is repudiation measured under the law?  But is that from the perspective of a reasonable employee, from the perspective of the NLRB, from the perspective of an objective outside viewer? Well, I think that when you look at the cases, it's been in the view of the fact finder or the board ultimately. And in many cases, River's Edge is an example, the timeliness factor was not satisfied, but the board still said it was an effective repudiation. In that case, it happened well after or well into the case, maybe the day before the case was tried, if I'm recalling correctly. And so the timeliness factor there, according to the board, didn't matter as much because other elements and the facts of the case made the repudiation effective. What difference is owed to the NLRB and their judgment about the totality of the circumstances? Well, I suggest that the standard here is whether they made an error of law, whether or not they made mistakes of fact, and whether or not they're arbitrary and capricious. And I suggest to you there's no evidence that supports their conclusion here that the repudiation was not effective. All of the evidence that was presented was what we, the employer, did working with the board to remedy these ambiguous provisions, reissue them, and then conceivably not have to litigate them according to the judge's own decision and the discussion which is part of the record as the hearing began. And then at that point, when the decision is issued, a finding is made on that. Your time's almost up, but I want to hear from you on the other issue about the PIN. Thank you. Let me move to the issue of the PIN. So I suggest to you there, Your Honor, that the ALJ strike that, that the board also erred when it overruled the ALJ's factual determination that special circumstances warranted the banning of all PINs. Because among other reasons, all of the evidence, none of which was rebutted by the general counsel nor rejected by the ALJ, demonstrated that the PINs did in fact pose a safety risk as well as a risk to property. The board stated basis that there was no evidence of actual injury or actual harm to property. I suggest to you this is the point. Even the ALJ concluded that in fact it was obvious that PINs would pose a safety harm or a potential damage to property. And if I understand the record correctly, and correct me if I'm wrong, my understanding is that the bar on PINs covered any employee who came in contact or would come in contact with vehicles. Is that correct? Well, it's phrased as coming in contact with the public. The record down below demonstrated as the parties went through at the hearing what those people do. The record demonstrated that those people were in and out of the vehicles all day long, depending upon what their job was. But does the record show whether any person who doesn't come in contact with the public exists? There was no question about which categories of employees in the record don't come into contact with the public. The record is silent about whether employees like that exist or do not exist. About belt buckles? Well, Your Honor, I don't believe, certainly the dress code policy or the line that's at issue before you here, I don't think that belt buckles are addressed therein. Elsewhere in the In other words, that provision doesn't prohibit an employee from wearing a belt buckle whether it has a message, as in a NASCAR belt buckle, or no message, just a regular plain belt buckle. Well, Your Honor, I suggest there that that probably would be viewed as insignia or message clothing. But your safety argument doesn't encompass the message language. That's correct. So I think there's two pieces to it. One is the safety and the harm to property. And then the second part is message clothing and the ban on that issue. I think perhaps your stronger point is that you're trying to have a uniform look for your employees that's part of your image. And I assume that was in the record as well. It is, and it's briefed thoroughly by both parties. And I point the Court's attention to the W. San Diego case in particular. I think that case is very analogous to our situation where the employer there banned any kind of buttons or pins because it was going for projecting a certain kind of professionalism and image to the public. Well, there it said it was trying to create the Wonderland experience. Is that what BAC Honda is trying to replicate? Not Wonderland, Your Honor, but certainly I think the record shows that we are trying to cultivate the image of being the number one Honda dealership on the planet, I think is the exact phrasing in the record. But if we took that view, wouldn't we be saying essentially that any time you have a uniform policy, you can ban insignia? I don't think you would, Your Honor, because the record here goes beyond that. We're not just saying, well, we have a policy. We're saying we have a policy. We're saying it's been enforced consistently for years. We're saying that we've spent millions of dollars each year promoting an image of professionalism in a highly competitive industry. And anything that detracts from that image hurts our image and our relationships with our customers. So it's developed more in our brief. It's developed more in the record. We're not just saying... But not everyone has to wear the uniform. What's that? Not everyone has to wear the uniform. Some people can wear, am I right, clothing of their own selection. The record shows that here's how it's broken down. The service techs and the service advisors, I believe, they have to wear the uniform. The salespeople have the choice of wearing either the BAC polo with the BAC Honda label on it, or they can wear a suit and tie. And again, that goes to the image of professionalism. So there's an exception for that group, but I point the court to the New York opinion letter case, the New York attorney opinion letter case we cite, where there, based on professionalism, the board itself said it was okay to have that. So if I came in as a salesman wearing a hoodie, that would be considered a violation of the policy? It would, and you'd be sent home and asked to change regardless of what you're wearing. But I could wear an ugly suit. Well, I don't know, Your Honor. I suppose ugly suits, we would have to argue about that. But certainly a hoodie, no matter what the message would be, you wouldn't be allowed it. How about a tie with a NASCAR logo on it? A tie with a NASCAR logo on it? Well, I don't think that that would be allowed on the policy, because I think it would be viewed as a message clothing promoting NASCAR. Now, if we had ties that said BAC Honda, that might be different. And I think the record testimony was, it doesn't matter to us what the message was, and that was not controverted. It's that anything that detracted from that image we were trying to present. Thank you. Thank you, Your Honor. May it please the Court, Jared Cantor on behalf of the Labor Board. Two opening points, Your Honors. The company failed to effectively repudiate its maintenance of the 2010 Hamburg provisions. Litigated below, the company essentially did not contest below and is not contesting here that they in fact were unlawful. The company below accepted the fact that these might be ambiguous. There was no board order. The company voluntarily worked with the board to change the policy, correct? Yes, Your Honor. And so that's a board policy to try to get companies to fix ambiguous or perhaps illegal policies. So they did exactly what the board would request. And they seem to be penalized for having done that. They would have been perhaps better off to have fought the issue below that these were not that ambiguous. Well, Your Honor, the board policy is not to get necessarily the employer off the hook by letting them avoid litigation. The policy of the board is to effectuate the purposes of the act, which is to protect employees' Section 7 rights. There's no evidence that the Section 7 rights had been violated, was there, in the hearings? They picketed. They had an election. The union won. Later on, the unions decertified. Under Lutheran Heritage, under the framework that is recognized, the board can find handbook provisions unlawful for several different reasons. The analysis used here was that they would be reasonably construed by... I thought you used the term could, not would. Would is your standard, but you used the term could. In our brief, Your Honor? Yeah. I apologize if I did the board on occasion a would or a could slips in. The language generally is would. That is the standard. But again, importantly below, the company wasn't contesting that these were unlawful as to both the 2010 handbook and as to the 2013 handbook. The company did not litigate that would reasonably understood. This case is essentially about whether they carried their burden of an affirmative defense to find that there was no unfair labor practice. No, an affirmative repudiation. Isn't it an affirmative repudiation after they and the board agreed to the changes? The board's position is they didn't affirmatively repudiate. Isn't that the issue? Yes, Your Honor. That they had maintained for many years an unlawful handbook. So when they went to... Which hadn't affected anybody's rights, apparently. We are honored. That evidence is not required. It's accepted that the mere maintenance of an unlawful handbook, regardless of bringing in a thousand witnesses who said they did understand it or didn't understand it, that's not as what's required under board and court accepted. What policy is advanced, what reasonable policy is advanced by requiring repudiation in a case with these facts? And I mean by requiring repudiation, requiring repudiation of the strong kind that the board seemed to require, which would be an affirmative statement that we knew we were doing wrong. Well, Your Honor, that's because in all litigated cases, you're going to wind up at the end with a notice that the act was violated, that the employer acknowledges that they violated the act, and importantly that they promise not to do that again. And that puts employees on notice that they have these rights, that these rights were being violated, prima facie violated, and that they are now on notice in the future that if the employer were to renege on this. Yeah, but in this case, there was a voluntary change of the... Look, they did it voluntarily. It wasn't an order that ordered them to do it. You had a voluntary discussion with the board over many months, and they come up with a new handbook. It's after that that I think we have to discuss. The question is, did they then have to say, by the way, we apologize, our previous handbook might have been misconstrued. Is that what you're saying here? Absolutely, Your Honor. Yes, that merely working with the board so that when they published the 2013 handbook, and again, that's accepting the dress code, which they did not change. If you say why, why is it reasonable to require that additional step? Of repudiation? Because otherwise, Your Honor, the purposes of the act, as I outlined in Passivant, are not satisfied. That the board, by working with the parties here to make sure that they don't commit future unfair labor practices, that doesn't remedy the fact that they had committed an unfair labor practice for many, many years. But there had been no finding that they had committed an unfair labor practice. There was an issue which was raised, and they voluntarily worked with you to straighten out the handbook. Well, I would disagree, Your Honor. The board found that these 2010 provisions were an unfair labor practice. After the fact. Well, Your Honor, the discussions with the region occurred... No, no, wait a minute. Wait a minute. Answer this question. At any time prior to the hearing, had there been a formal finding that the previous handbook had violated the act? Well, no, Your Honor, that was found at the hearing. That was the purpose of the hearing. It wouldn't have been... There's no finding before the hearing. I thought the purpose of the hearing began because you didn't agree with their repudiation, that it wasn't significant enough. Well, Your Honor, that came out certainly in the hearing and then afterwards. The hearing also involved the second issue, which is the dress code. But both issues, the evidence was adduced. And again, the evidence had to be adduced by them. The burden was on them. Well, you never get to the repudiation issue if there wasn't a finding of a violation. Everybody, I think, agrees on that, right? Correct, Your Honor. Yes, so there must have been a finding of a violation. If we're all talking about repudiation, everybody seems to accept that there's a finding of a violation. Yes, Your Honor, I will point the court to the administrative law judge's decision that found page... I believe it starts at page 8 and goes through 9... And then the board affirms that. Correct. And it indeed finds additional provisions were unlawful. But could you still answer just, in a case like this, what purpose is being served by requiring them to say, and we engaged in a violation? So you say, in the case in which it was litigated and there was an order and a finding of harm, and let's say there was evidence that the employees had been chilled, as there is not here. You say that the requirement to say, we committed a wrong, is important because why? Well, Your Honor, you don't require evidence, it's the same as whether you committed a wrong. In the case in which there was that, you say, and I think they accept, that the board precedent suggests you have to go further than making a change. You have to actually say, we committed a wrong, and make that known in order to repudiate. Correct? Well, Your Honor, the repudiation would have happened before the hearing. It wouldn't be coming after the board has issued its order. Okay, but to count as a repudiation, you have to have done that, right? Yes, Your Honor, or I should say, Passivant has multiple criteria. It is the totality of the circumstances, and the board, it was incumbent on the company here to put forward that evidence, and they did not do it. And why? What purposes serve in a situation like this, when they have voluntarily complied with the rule in advance of any finding initially that they had committed a wrong, they worked it out? Why does the board now require them to say, and, not just that we changed the rule, but we're changing the rule because the old rule was illegal? Well, Your Honor, it had already been alleged in the, that's the foundation of the complaint, was that this was unlawful. It's not that you failed to repudiate an unlawful. It's that these provisions that you've maintained for many years in your 2010 handbook are unlawful. So that is the allegation. Are you saying they could defend in two ways from that complaint? Either A, they could say, no, it wasn't unlawful, or B, they could say, even if it wasn't unlawful, we've repudiated? Absolutely, Your Honor. And the, as to both the dress code and these 2010 provisions, the approach that And how did they, did they do that? By, by issuing the new handbook, a handbook which was developed with proper, properly in accordance with what the board wants to get voluntary compliance, they did that. And then after there's a decertification petition, I assume which occurred, although it's not in the record, at least I haven't seen it, then a complaint is made by the union, and then the board says, oh, by the way, you didn't repudiate properly, and that's why we bring the complaint. Your Honor, the timeline of when the union was decertified, none of that is in the record here. I understand that. So I cannot speculate as to, all we know is the date that the charge was filed, that the complaint was filed, that the new handbook was issued, and that the amended complaint issued. But as to Your Honor's point, the board does, working with the board is certainly, fulfills one of the purposes here is that you get, and employers can come to the board and they can work with the regent to, if they're going to reissue a handbook, work with them to make sure that they fix any potential problems. But here they had already been flagged for having an unlawful handbook. The charge had been filed, and the complaint was out there. Simply- That's something that I am interested in, is the timeline. My understanding is that there wasn't a complaint filed until after they had actually issued the new handbook. No, Your Honor, that's incorrect. Incorrect on that? Yes, Your Honor. The charge was filed June 20th of 2012, the complaint was filed December 31st, 2012, and the new handbook came out in May of 2013. So the new handbook came out about five months after the complaint, the original complaint. Is that in the record? Yes, Your Honor, in the appendix are all of the- Could you just, I'm not getting what the NLRB's reason is for wanting the employer to have to say, not just, here's a new rule, which the board has blessed, but that the old rule was illegal. What's the purpose of requiring that communication? Because a fundamental purpose, whenever the board issues any type of remedy, is notice to the employees that their rights were violated, and that the employer's not going to do that in the future. And what's the importance of saying that? Just spell that out for us. Why is it so important to have the employer say that, not just, here's a new rule that is a good rule, but the old rule was an illegal rule? Well, because, Your Honor, it apprises employees of their rights that the employer had violated them already, and that going forward, the employer is going to respect them, and the employees are on notice that the employer had done this in the past, is saying they're not going to do it in the future, and they're on notice again if this does happen. Okay, so that seems like just a general policy that would apply as a default almost all the time when there's a violation. Yes, Your Honor. So what are the special circumstances as the board sees it, when we might deviate from that rule, and allow an employer not to repudiate in that strong sense, would be what? Your Honor. Are there any? Your Honor, my understanding, and it's addressed in a footnote in response to a quote they make to our case handling manual, the board essentially does not allow, essentially non-admission an employer to remedy unlawful conduct, but at some point not putting it out there that they had committed this unlawful act. Employers can't essentially get out of jail free without notifying their employees that they had violated the act, and won't do it in the future. So non-admission is strongly disfavored by the board, and is essentially never. And Riverbend, Broyhill are different because? Well, Your Honor, the company that says that, and it's part of its argument that we're being very technical and mechanical here, and that what they did is just what the employers did in those cases, and that's just patently not true. In Riverbend, the employer canceled the unlawful increase in meal prices. It then reimbursed an affected employee, and it posted notices that the increase was unlawful, and as the ALJ found in that case, implicitly assured employees that it would not do any other increases without first bargaining with the union. And in Broyhill, we have an employer posting notices that the supervisor's conduct was improper, assuring employees that it would not interfere with their rights in the future, and it explained what the employee's rights were. None of that happens here. We have a new 60, 70, 80 page handbook dropped at employee's feet, and that's it. Does the record reveal, I'm sorry, does the record reveal at any point, either the NLRB or the general counsel saying, you need to do one more thing in order to repudiate, and if you do that, we would concede that you repudiated, or them offering to do that? Such as posting a notice that says the prior policy was no good? No, your honor, I don't believe that happened below, and I don't believe the board generally would, at the point where the litigation has commenced, if the, it's certainly entirely possible, if while working through the handbook, and again, accepting the 20, the dress code, which they would not change, if they were working through this, and again, they were counsel, this is not an unrepresented party before the board who was ignorant of the law, or what was happening. Your time is almost running up, and I want to ask you a question about the dress code. Yes, your honor. Just so before you get to, let me ask one more on this, and then we'll make sure you have time to do that. This idea that the board sort of signed off on the new rule, which happened, I guess. Yes? Yes, your honor. What's the context in which that occurs? What does that mean? I take it it wasn't a settlement agreement between the two parties? No, your honor, it's that after the charge was filed. You can keep going. Then the, and again, these might be non-record discussions, happened between the company and the region, where. What does the record show about what that meant that the board signed off? Do we have any? Well, I think that there's no, there was no then subsequent allegation that there was anything wrong with the 2013 handbook, except for the dress code, which they wouldn't change. So by working with the board, a party then is certain going forward that, and I should say the board's regional office, is then assured going forward that there's no problem with what they're about to put out. Okay. I would like to address then the dress code, which, and again, as to Judge Stahl's question, starting out here, this was once again a situation where the company essentially didn't dispute that this was unlawful. The question then became whether they carried their burden of showing special circumstances. So again, the burden was on them to show this. Similar to the issue we've already discussed, this was not a case where the general counsel was out there having to prove these were unlawful. The company adopted the position below that, okay, yes, these are unlawful, but we have good reasons for these. And as to the dress code, specifically addressing first the public image issue, what the board found there, under the standards that an employer must demonstrate both a deliberate cultivation of a particular image as part of its business plan, and that the limitations imposed are tailored to protect that image without overly impeding employees' rights. Well, so how, let me, you know. I'd like to know how this particular dress code, which, by the way, from what I know, doesn't deviate from most dress codes where people are in the public, how this in any way affected an employee's rights. We know the record shows that employees could come to work dressed as they wanted to, but once they were on the floor, they had to dress with the BOP uniform. We know that they were able to wear pins when they got to work. That's in the record. We know that their lunchbox had union logos on them. We know all that. And so why can't an employer decide that if it's McDonald's, we want them to wear a McDonald's shirt and nothing else? If it's BAC Honda, we want them to wear the BAC uniform and BAC, the Honda uniform with BAC. And if it's a salesman, they should wear a shirt and a tie unless they wear the BAC uniform. Why, what is improper about that? Well, Your Honor, the board certainly recognizes, as do the courts, that employers have a legitimate interest in projecting this image. But it is a statutory right, as the Supreme Court has recognized and as the courts have recognized and as the board has long recognized, for employees to wear union paraphernalia while at work. That that right doesn't stop the moment you walk on your employer's premise. And so that there's a balancing that goes on here. And when an employer wishes to restrict that right, and again here the restriction with regard to the public image that the board found was on the one hand, they did not put forward a very strong case in terms of that deliberate cultivation of a very specific image. And on top of that, the restriction here was blanket. That it applies to all employees, all public-facing employees, at all times, regardless of what they're doing. And so we have a very broad- It's very clear on the job. Yes, Your Honor, and that is simply insufficient under very established case law. Republic Aviation and then onward. That just because you are on the job- Republic Aviation was an industrial case. Correct, Your Honor. It is not a case where anybody is interfacing with the public. This is a case where people are interfacing with the public. And I think that is very different from Republic Aviation, which is an industrial case where the people are not interfacing with the public. And it doesn't affect Republic's image. This could. Certainly, Your Honor, and that's the balancing that goes on. The problem why we don't get to the balancing here is because it's a blanket ban. And that's- And you're saying they didn't do enough to show deliberate cultivation of the image in a way that would be affected adversely. Correct, Your Honor. What we have here is we have service technicians wearing a generic Honda uniform that just gets the word Bach added. Thank you, ma'am. Do you want to go ahead? I do. I'd like to also go back to the initial question of why this case shouldn't be either sent back so that they can put in evidence which they were lulled into believing was not necessary. Well, Your Honor, so now we're back to the repudiation issue, that this doesn't have to do with the dress code part. So the repudiation issue. So they point initially saying we were lulled into this because we didn't think that this was going to be litigated. Well, the ALJ said we're not going to do that. Correct, Your Honor. And so that would have been the point for them to file objections to the ALJ's decision and pointing that out. And the exceptions must be specific and must be detailed. And they did not make any exception saying we need the record reopened to introduce evidence because we didn't believe this was going to be litigated. And they point to the stipulation as showing that they were lulled into this. The stipulation was just the general counsel agreeing that these unlawful 2010 provisions were no longer in effect, not that they had been repudiated. And in their reply brief, they say, oh, well, if you look at our exceptions brief, we make this lulled argument there. That's where we talked about due process. The point that they made in their exceptions brief, which is not the proper place to raise it, but in any event, they argue that they raised it there. But importantly, as they admit in their footnote in the reply brief, there they said we were not on notice that the remedy, the notice poster was going to have to be posted at all of these facilities and therefore that was improper. And indeed, the board picked up on that and overruled the ALJ on that point and said you only need to post this notice at the one facility. And if I may just briefly note, they point to general counsel's memoranda. Those are non-binding on the board. The general counsel issues those in his prosecutorial discretion, but they have absolutely no weight on the board's finding the fact or interpretation of board law. Thank you. Thank you, Your Honor.